IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

**EZRA W. BRADEN,**

**Plaintiff,**

v.                                                                    Civil Action No.  5:23-cv-00106

**UNITED STATES OF AMERICA,**

**Defendant.**

## COMPLAINT

NOW COMES Plaintiff, Ezra W. Braden, by and through his counsel, and for his Complaint against the following United States Government Employees: Timothy Workman, D.O., Hannah Broadwater, FNP-BC, and Rainelle Medical Center, Inc. and state as follows:

### PARTIES AND JURISDICTION

1.      Plaintiff, Ezra Braden ("Plaintiff" or "Mr. Braden"), is and was at all times pertinent herein, a resident of Greenbrier County, West Virginia.

2.      The events complained of herein occurred in Greenbrier County, West Virginia.

3.      The Defendant the United States of America, through the U.S. Department of Health and Human Services, at all times alleged herein is the federal governing body responsible for controlling, supervising, and managing the business affairs of its public health care providers. Included within the duties and responsibilities of the U.S. Department of Health and Human Services is the oversight and supervision of its employee/agent physicians, employees/agent nurse and other health care providers at Rainelle Medical Center specifically, but not limited to Timothy Workman, D.O. and Hannah Broadwater, FNP-BC.

4.      The Federal Tort Claims Act ("FTCA"), and more specifically, 28 U.S.C.S. § 1346(b) and §§ 2671-2680 provides that any action for medical malpractice against Public Health Service employees may be filed against the United States of America once all administrative remedies have been exhausted.

5.      On August 2, 2022, Plaintiff submitted his Claim for Damage, Injury or Death to the U.S. Department of Health and Human Services, which is attached hereto as **Exhibit 1**.

6.      On or about October 17, 2022, Plaintiff received a letter from the Department of Health and Human Services acknowledging receipt of his claim, which is attached as **Exhibit 2**.

7.      Plaintiff has exhausted his administrative remedies.

8.      Plaintiff has also complied with the filing requirements set forth in West Virginia Code § 55-7B-6.

9.      Upon information and belief, Timothy Workman D.O. ("Dr. Workman"), is and was at all times relevant to the events underlying this Complaint, a citizen of West Virginia, licensed to practice medicine in West Virginia.

10.     Upon information and belief, Hannah Broadwater, FNP-BC ("Nurse Broadwater"), is and was at all times relevant to the events underlying this Complaint, a citizen of West Virginia, licensed to practice nursing/medicine in West Virginia.

11.     Upon information and belief, Rainelle Medical Center, Inc. ("RMC"), located at 176 Medical Center Dr., Rainelle, WV, 25962, is a FTCA deemed facility.

12.     Upon information and belief, both Dr. Workman and Nurse Broadwater were, at all times relevant and material hereto employees of the Federal Government, working at RMC, and covered under the FTCA.

13.     Plaintiff received care and treatment from RMC and the Federal Employees in or

about September 2021 through January 2022, which treatment form, in part, the basis of Plaintiff's Complaint in this action.

14.     Venue is proper in Greenbrier County, West Virginia. The Defendant conducts business in Greenbrier County, WV, and the acts and/or failures to act giving rise to this action occurred in Greenbrier County, West Virginia.

15.     Additionally, the District Court has exclusive jurisdiction over this FTCA Claim. *See Wood v. U.S.*, 961 F2d 195, 197 (Fed. Cir. 1992).

16.     More than six months have passed since Plaintiff presented his claim to the Defendant and no action has been taken. (Claimant must file a federal court complaint within six months of the agency's denial of the administrative tort claim, or can file a federal court complaint anytime six months after presenting the claim if no agency action has been taken. 28 U.S.C. § 2401(b)). Thus, this Court has jurisdiction of this claim.

**OPERATIVE FACTS**

17.     On September 28, 2021, Mr. Braden presented to RMC[1] and his primary care providers, Nurse Broadwater and Dr. Workman, with a complaint of persistent leg swelling and pain for approximately the past four weeks. Mr. Braden was evaluated by Nurse Broadwater and Dr. Workman, and the following plan was put in place:

Pain and swelling of left lower leg (M79.662)
Current Plans

- Referred to Greenbrier Clinic. Routine. Refer patient back for follow-up and treatment: advise as to diagnosis, suggest medication or treatment.

Note: Sending for venous doppler of the left leg. Injection of Clindamycin in the office and starting on Augmentin.

If symptoms do not resolve with Augmentin and if negative doppler referral to vascular may be necessary.

Signed by Hannah Broadwater, FNP-BC (9/28/2021 10:01 PM)

---

[1] This health center is a Health Center Program grantee under 42 U.S.C. 254b, and a deemed Public Health Service employee under 42 U.S.C. 233(g)-(n)

18.     Mr. Braden then had an ultrasound performed at Greenbrier Clinic on October 28, 2021, performed by Dr. Frank A. Muto, M.D., the findings of which were:

**FINDINGS:**
Left lower extremity duplex venous ultrasound performed with color and spectral waveform analysis of the deep veins.

The left common femoral, femoral, and popliteal veins are compressible and show no echogenic material within their lumens. Augmented flow on calf compression. The visualized calf veins are patent.

**IMPRESSION:**

No evidence of left lower extremity deep venous thrombosis.

19.     Thereafter, Mr. Braden presented back to Rainelle, Nurse Broadwater, and Dr. Workman on November 5, 2021, for a follow-up visit post ultrasound. The plan after that visit was as follows:

Assessment & Plan (Hannah Broadwater FNP-BC; 11/8/2021 1:31 PM)
Localized swelling of left lower leg (R22.42)
Current Plans

- Referred to Rai, Kumar MD. Routine. Refer patient back for follow-up and treatment: advise as to diagnosis, suggest medication or treatment.

Edema (R60.9)
Current Plans

- Started Lasix 20 MG Oral Tablet, 1 (one) Tablet qam prn, #30, 11/08/2021, Ref. x1.
  Local Order:
  O  Patient Instructions: left leg swelling

Note: Please refer for Vascular evaluation by Dr. Rai. Unexplained swelling of left lower extremity only. No DVT on venous doppler. No improvement with treatment for cellulitis.

Visible damage to the left great toenail. Dr. Workman also evaluated patient and recommended referral to Vascular for additional evaluation.

Trail of Lasix to see if this will resolve symptoms as well.

20.     Mr. Braden reported to the visit with Dr. Rai as prescribed on November 16, 2021, where Dr. Rai noted:

4

## Assessment & Plan
**Assessment & Plan**
(1) Edema:
    Code(s):
R60.9 - Edema, unspecified
(2) Lymphedema:
    Status: Acute
    Code(s):
I89.0 - Lymphedema, not elsewhere classified
    SNOMED Code(s): 234097001
    Category: Medical
    Plan:
-left leg elevation 2 pillows at night.  Wear graduated compression stocking in the morning before getting up from the bed.  Can remove the stocking at night.
-the patient will benefit from lymphatic massage, lymphedema pump.
-weight loss, exercise, risk factor modification.  The patient will also benefit from venogram to rule out any venous occlusive lesion. (11/23/21)..  Will hold metformin 24 hours before the venogram.  The patient was explained regarding the procedure indications risks benefits and alternatives.  The risks including but not limited to Bleeding, hematoma, emboli, DVT, renal impairment.

(3) Chronic venous insufficiency:


    Status: Acute
    Code(s):
I87.2 - Venous insufficiency (chronic) (peripheral)
    SNOMED Code(s): 20696009
    Category: Medical
    Plan:
As above.
    Medications: *New*

| | | |
|---|---|---|
| comp.stocking,knee,long,medium | As directed 2 ea ORF 20-30 mmhg knee-high. | I89.0 - Lymphedema, not elsewhere classified, I87.2 - Venous insufficiency (chronic) (peripheral) |

**Medication Reconcilliation Completed**
Medication Reconciliation Completed: Yes

## Coding
**Level of Care Code**
99202 Stfwd MDM or 15-29Min

**Diagnoses**
Edema  R60.9
Lymphedema  I89.0
Chronic venous insufficiency  I87.2

21.    Mr. Braden presented back to Dr. Rai on November 23, 2021, for a lower leg venography.

22.    Thereafter, Mr. Braden presented back to Rainelle, Nurse Broadwater, and Dr. Workman on December 30, 2021, for another follow-up visit. Nurse Broadwater noted:

Current Plans

- Immunization: TDAP VACCINE IM, > 7 YEARS (90715)
Hypertriglyceridemia (E78.1)
Low testosterone in male (R79.89)
Impression: only 24
Elevated hemoglobin (D58.2) < HCC48>
Note: Keep Podiatry appointment but referral also being made right away to wound care. Previously was doing very well with A1C and followed by Endocrinology but A1C today is over 9%. Jardiance added to medication regimen. 3 sample boxes provided. If doing well on medication will send RX for 25mg of Jardiance daily. To watch for yeast infections. Ozepmic originally started by Endocrinology, (Dr. Douglas) but he is not able to tolerate because of GI upset.

He has a 6 week follow up with Dr. Rai as well.

CBC and CMP today as well.

Continue Augmentin which was already started.

Nursing re-dressed the foot. Keep clean and dry. Frequent dressing changes will be needed because of drainage.

He is having difficulty fitting foot in his regular shoe. Nursing contacted Orthopedics (Dr. Griffith), Mtn State Ortho and We Care for possible boot but he has to be seen by them to have a boot.

Going into the New Year and offices being closed, should this become worse/fever/erythematous streaking etc to go to the hospital!

Referrals has had a difficult time reaching him for a therapeutic phlebotomy but right now our main focus is the left lower leg and foot.

Signed by Hannah Broadwater, FNP-BC (12/30/2021 9:52 AM)

23.    Mr. Braden then presented to Raleigh General Hospital on January 4, 2022, for follow-up care where it was noted:

### History of Present Illness (HPI)

01/04/2022: the patient presents for evaluation today. He states that since December of 2012 when he has had some swelling of his left lower leg and foot. He notes that he was seen by vascular surgery and had venograms as well as ultrasounds which have shown no blood clots. He has continued to have swelling. He had a lesion developed on the underside of his left foot. This has worsened and become a large swelling wound with significant drainage. He presents for evaluation today. He notes that he is a diabetic. He does not smoke. He notes there is some mild discomfort however no significant pain. He does have diabetic neuropathy. Upon investigation of the wound and further debridement, fragments of bone were discovered within the wound bed. He also has changes of the foot suggestive of Charcot foot And osteomyelitis. He notes that he has never had an x-ray of the foot. We will proceed with her referring the patient to Infectious Disease, obtaining an x-ray of his foot, as well as obtaining labs, EKG, and chest x-ray. The patient almost certainly has osteomyelitis of the left foot. if he has significant bleeding from the debridement. Electrocautery as well as silver nitrate was required as well as a pressure dressing in order to control hemostasis. We will see him back in 1 week for follow-up.

24.    Mr. Braden had an x-ray Performed at Raleigh General on January 12, 2022, which revealed:

6

Findings: There has been no radiographic change over the past eight days, in this patient with severe osseous midfoot deformity with components of osseous destruction, fragmentation and malalignment. Dorsal displacement of the proximal metatarsals is again evident on the lateral projection. As best can be seen, the distal left tibia and fibula are intact, as are the talus and calcaneus. The phalanges are intact as well. There is severe soft tissue swelling of the entire midfoot. No subcutaneous emphysema is identified.

Impression: Severe osseous midfoot deformity with components of osseous destruction, fragmentation and malalignment - not significantly changed over the past eight days.

25.     Mr. Braden had an MRI of the foot at Raleigh General Hospital on January 13, 2022, which revealed "destruction of his mid foot…consistent with a Charcot joint."

26.     RMC, Dr. Workman, and Nurse Broadwater breached the standard of care by allowing Mr. Braden to continue to be weight bearing on his foot for months, which caused significant injury to Mr. Braden's foot from September of 2021 until January of 2022.

27.     RMC, Dr. Workman, and Nurse Broadwater failed to order a simple x-ray in September 2021 to determine whether Mr. Braden had any fractures in the foot.

28.     RMC and its employees' failure to order this simple x-ray and to allowed Mr. Braden to continue to be weight bearing for months which caused significant damage and injury to Mr. Braden's foot.

29.     This has now led to an above the knee amputation. Further, Mr. Braden will require follow-up care and medical expenses into the future which are caused by the Defendant's failure to comply with the standard of care.

## COUNT I
**(Negligence Against all Defendants)**

30.     Plaintiff hereby restates and re-alleges, as if fully set forth verbatim herein, each and every allegation contained in the preceding paragraphs of this Complaint, and Plaintiff further

complains and says as follows:

31.    Plaintiff received his care from RMC and/or agents or employees and the Federal Employees.

32.    On or about September 2021, Plaintiff presented to RMC for treatment.

33.    The Federal Employees rendered substandard or otherwise negligent care to Plaintiff as evidenced in Plaintiff's previously produced Screening Certificate of Merit and Form 95.

34.    Specifically, RMC, its agents and/or employees, and the Federal Employees:

- Failed to order an x-ray; and

- Failed to refer Plaintiff to a podiatrist.

35.    As a direct and proximate result of the joint and several negligence and deviations of the Federal Employees, as evidenced in Plaintiff's previously produced Screening Certificate of Merit and herein, Plaintiff suffers severe, permanent injury and disability, as well as mental and physical pain and suffering, and loss of enjoyment of life, which could have been avoided had the Federal Employees followed the standard of care.

36.    As a direct and proximate result of the joint and several negligence and deviations of the Federal Employees, as evidenced in Plaintiff's previously produced Screening Certificate of Merit and herein, Plaintiff has suffered and will continue to suffer economic and non-economic damages, which could have been avoided had the Federal Employees followed the standard of care.

## STATEMENT OF UNKNOWN CIRCUMSTANCES

37.    Plaintiff hereby restates and re-alleges, as if fully set forth verbatim herein, each and every allegation contained in the preceding paragraphs of this Complaint, and Plaintiff further

complains and says as follows:

38.   Plaintiff, through counsel, has undertaken a thorough investigation into the allegations complained of herein.

39.   However, Plaintiff is unaware if any other individual or corporate entities are responsible for the negligence complained of herein, including the Federal Government.

### RELIEF REQUESTED

WHEREFORE, Plaintiff demands judgment against Defendant for damages as follows:

(1)   Medical, nursing, support, and therapy expenses, both past and future;

(2)   Physical injuries, both temporary and permanent;

(3)   Psychological injuries, both temporary and permanent;

(4)   Severe and significant emotional distress, and mental pain and suffering, both temporary and permanent;

(5)   Fear, humiliation, and embarrassment, past and future;

(6)   Annoyance and inconvenience, past and future;

(7)   Loss of physical health and well-being, past and future;

(8)   Loss of enjoyment of life, past and future;

(9)   Loss of income and/or earning capacity, past and future;

(10)   Loss of value of employment benefits, including, but not limited to, loss of value of pension/retirement benefits;

(11)   Disability;

(12)   Compensatory damages;

(13)   Civil penalties;

(14)   Post-judgment interest; and

(15)   Such other and further relief as justice requires.

9

**PLAINTIFF DEMANDS A BENCH TRIAL.**

                                        **EZRA W. BRADEN,**

                                        **Plaintiff,**

                                        **By Counsel:**


*/s/C. Edward Amos, II*
Scott S. Segal, Esq. (WV Bar # 4717)
C. Edward Amos, II, Esq. (WV Bar # 12362)
**THE SEGAL LAW FIRM**
A Legal Corporation
810 Kanawha Boulevard, East
Charleston, West Virginia 25301
Telephone: (304) 344-9100
Facsimile: (304) 344-9105


10